IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| J4G, LLC | § | |
| | § | |
| | § | |
| | § | |
| **DEBTOR** | § | BANKRUPTCY CASE NO. 25-34347 |

**DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE**

TO: ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

## ARTICLE I
## INTRODUCTION

### Identity of the Debtor

J4G, LLC ("Debtor") filed its voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division on July 30, 2025. The Debtor manages and operates a service restaurant café and landscaping company. This Plan ("Plan") proposes to pay creditors from future income by continuing operations and reorganizing its current debts.

The Plan also states whether each class of claims or equity interest holders is impaired or unimpaired. After such plan has been filed, it must be accepted by holders of claims against, or interests in, the Debtor, or be found by the Court to be fair and equitable with respect to each class of claims or interests.

### Explanation of Chapter 11

Chapter 11 is the primary reorganization chapter under the Code. Debtor is a small business and has decided to proceed under Subchapter V – Business Debtor Reorganization ("Subchapter V"). Under Subchapter V, the Debtor is permitted to reorganize its business for the benefit of its creditors, equity interest holders, and itself. As required by the Code, the Plan places claims in various classes and describes the treatment each class will receive. After such Plan has been filed, it must be accepted by claimholders and equity interest holders or determined by the Court to be fair and equitable with respect to each class of claims or interests that is impaired and has not accepted the Plan.

1

## Explanation of the Confirmation Process

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. As set forth above, a Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the Debtor vote in favor of the plan to be confirmed by the Court.

Confirmation of the plan discharges the Debtor from all its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the Debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether they have accepted the plan.

## Voting Procedures

**Unimpaired Class**. Claimants in Class 1, 2 and 6 are not impaired under the Plan. Such Classes are deemed to have accepted the Plan.

**Impaired Class**. Class 3, 4 and 5 Claimants are impaired as defined by Section 1124 of the Code. The Debtor are seeking the acceptance of the Plan by Claimants in Class 3, 4 and 5. Each holder of an Allowed Claim in Class 3, 4 and 5 may vote on the Plan by completing, dating, and signing the ballot sent to the holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Robert "Chip" Lane, The Lane Law Firm, PLLC, 6200 Savoy Drive, Suite 1150, Houston, Texas 77036 or via email at bk@lanelaw.com. To be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

## Summary of Plan

Debtor' Plan of Reorganization provides for the continued operations of the Debtor to make payments to its creditors as set forth in this Plan. Debtor seeks to confirm a consensual plan of reorganization but is prepared to confirm this plan pursuant to § 1191(b) if necessary.

**Best Interests of Creditor Test**

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. For the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor' creditors. Accordingly, the proposed Plan must provide the Debtor' creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor' creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

## ARTICLE II
## DEFINITIONS

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1. **"Administrative Claim"** shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2. **"Allowed Claim"** as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3. **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

4. **"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5. **"Bar Date"** shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

6. **"Case"** shall mean this Chapter 11 case.

7. **"Claim"** shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

8. **"Claimant"** shall mean the holder of a Claim.

9. **"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10. **"Code"** shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

11. **"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

12.     **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

13.     **"Court"** shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

14.     **"Creditor"** shall mean any person having a Claim against Debtor.

15.     **"Debt"** shall mean any obligation of Debtor alone, and any obligation of Debtor and any other Person, to any Entity.

16.     **"Debtor"** shall mean J4G, LLC.

17.     **"Disbursing Agent"** shall mean the Reorganized Debtor or in the event of a confirmation under 11 U.S.C. §1191(b) shall mean the Sub-Chapter V Trustee or other entity or person as the Court mandates.

18.     **"Effective Date"** The Effective Date of the Plan is the first business day following the date that is 30 days after the entry of the order confirming the Plan becomes final and non-appealable; provided however, if an appeal of the order confirming the Plan has been taken and a stay of confirmation pending appeal in effect, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

19.     **"Entity"** shall include Person, estate trust, and governmental unit.

20.     **"Equity Interest Holders"** shall mean holders of the equity interests in the Debtor.

21.     **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

22.     **"Petition Date"** shall mean the date on which the Debtor filed this proceeding, July 30, 2025.

23.     **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified, or supplemented.

24.     **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

25. **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

26. **"Reorganized Debtor"** shall mean the entity which shall assume title to and control of the Debtor' assets and liabilities upon confirmation as provided herein.

27. **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

28. **"Sub-Chapter V Trustee"** shall be that person appointed under 11 U.S.C. §1183.

29. **"Substantial Consummation"** shall occur upon Reorganized Debtor' commencement of payments to creditors as provided in this Plan.

30. **"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

31. **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

## ARTICLE III
## REPRESENTATIONS

NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

DEBTOR DO NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

## ARTICLE IV
## FINANCIAL PICTURE OF THE DEBTOR

### Financial History and Background of the Debtor

J4G, LLC started operations in June 2014.  Debtor's operations are a service restaurant café and landscaping company. Debtor elected to file a chapter 11 reorganization as the best means to resolve the current liabilities of the company and determine the secured portions of those creditors.

### Future Income and Expenses Under the Plan

The Debtor filed this case on July 30, 2025. Debtor proposes to pay allowed unsecured based on the liquidation analysis and cash available.  Debtor anticipates having enough business and cash available to fund the plan and pay the creditors pursuant to the proposed plan.  Attached hereto as Exhibit "B" are projections of gross income, expenses, and operating income for the next three years.  It is anticipated that after confirmation, the Debtor will continue in business.  Based upon the projections, the Debtor believes it can service the debt to the creditors.

### Post-Confirmation Management

The Debtor is currently owned 90.00% by Jean Ann Robinson and 10.00% by Gary Robinson. Ownership interests will remain unchanged following confirmation.

## ARTICLE V

## ANALYSIS AND VALUATION OF PROPERTY

Debtor operates a service restaurant café and landscaping company.  Debtor's assets include its cash on hand, inventory, and equipment.  There are fully secured creditors based on the liquidation analysis and UCC filings.  Any secured creditor not treated in this Plan as fully secured are therefore under secured.

A liquidation analysis of the Debtor' assets is attached hereto as Exhibit "A".

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

The Debtor will continue operating its business.  The Debtor' Plan will break the existing claims into six classes of Claimants.  These claimants will receive cash repayments over a period of time beginning on or after the Effective Date.

**Satisfaction of Claims and Debts:** The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article VI of this Plan shall be the sole and exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtor. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities, and obligations for the implementation of this Plan.

**Class 1 Claimants** **Allowed Administrative Claims of Professionals and Subchapter V Trustee** These claims will be paid in full by the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor' attorney's fees approved by the Court and payable to The Lane Law Firm, PLLC will be paid monthly until paid in full subject to approval by the Court out of the available cash. The Subchapter V Trustee fees will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $50,000.00.

**Class 2 Claimants** **Secured Priority Tax Claim (These claims are impaired)**

The following applies to all Class 2 Claims, which are Allowed Secured Priority Tax Claim comprised of ad valorem taxes secured by statutory liens against Debtor' real and business personal properties. The "Taxing Authorities" include Walker County Appraisal District. The claim will be paid pursuant to the terms listed below for Walker County taxing authority. Any and all ad valorem tax liens securing prepetition and/or postpetition taxes shall be retained against respective properties until such taxes are paid in full.

In the event the Reorganized Debtor sell, convey or transfer any of the property which is the collateral of the Taxing Authorities, the Reorganized Debtor shall remit such sales proceeds first to the applicable Taxing Authorities to be applied to the respective tax debts incident to any such property/tax account sold, conveyed or transferred and such proceeds shall be disbursed by the closing agent at the time of closing to the applicable Taxing Authorities prior to any disbursement of the sale proceeds to any other person or entity.

The Reorganized Debtor may pre-pay the pre-petition tax debts owed to the Taxing Authorities at any time. The Reorganized Debtor shall have sixty (60) days from the Effective Date to object to the Taxing Authorities' claims; otherwise, the Taxing Authorities' claims shall be deemed as allowed secured claims. Reorganized Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2025 and subsequent tax years) owing to the Taxing Authorities in the ordinary course of business as such tax debt comes due and prior to becoming delinquent under the Texas Tax Code, without the need to file an administrative expense claim and/or request for payment.

Should the Reorganized Debtor fail to make the payments as required in this Plan, the Taxing Authorities shall provide notice of that default by sending written notice by first class mail to Reorganized Debtor and Debtor' attorney advising of that default and providing the Reorganized Debtor with a period of five (5) calendar days to cure the default.  In the event that the default is not cured within five (5) days, the Taxing Authorities may, without further order of

this Court or notice to the Reorganized Debtor, pursue all of its rights and remedies available to it under the Texas Tax Code to collect the full amount of all taxes, penalties, and interest owed. The Reorganized Debtor shall be entitled to no more than one (1) Notice of Default. In the event of a second (2nd) default, the Taxing Authorities may pursue all rights and remedies available to them under the Texas Tax Code, in state court, without further order of this court or further notice to Reorganized Debtor.

Class 2 Claims include:

**2-1 Walker County Appraisal District** pertains to the allowed secured claim of **Walker County** in the total amount due for the estimated 2025 taxes **(POC 2-1).** The estimated 2025 property taxes of $365.16 shall be paid when they come due and owing in the ordinary course of business.

**Class 3 Claimant – Secured Claims of Assets (These claims are impaired)** Allowed Secured Claim is secured by property of the Debtor' bankruptcy estate (or that are subject to set-off) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as a general unsecured claim. The following class contains Debtor' secured pre-petition claim and the proposed treatment under the Plan:

**3-1 U.S. Small Business Administration ("SBA")(No Claim Filed) has an estimated** claim in the amount of $1,101,458.43 is secured by all assets of the Debtor. SBA asserts it is fully secured by the Debtor's business property pursuant to a UCC Lien that was recorded on May 27, 2020, which appears to put this claim in Lien Position 1. Debtor proposes to pay the partially secured claim in the amount of $97,465.17 at 8.25% over 3 years in 60 equal monthly payments at $3,065.46 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day. SBA will retain its lien until its secured claim is paid per the terms of the Plan. The remaining under secured portion of this claim of $1,003,993.26 will be treated in Class 4 of this Plan.

**3-2 Kubota Credit Corporation (POC 3-1) has a** claim in the amount of $12,725.89 which is secured by a 2022 Kubota R640R43 VIN 0715. Debtor will continue making the monthly payments pursuant to the note.

**3-3 Kubota Credit Corporation (POC 4-1) has a** claim in the amount of $12,725.89 which is secured by a 2023 Kubota U27-4R1 VIN 4321. Debtor will continue making the monthly payments pursuant to the note.

**3-4 Kubota Credit Corporation (POC 5-1) has a** claim in the amount of $5,284.40 which is secured by a Kubota Z242KW-48 VIN 3955. Debtor will continue making the monthly payments pursuant to the note.

10

**3-5 Kubota Credit Corporation (POC 6-1) has a** claim in the amount of $28,139.55 which is secured by a 2024 Kubota U17VR1 VIN 9524. Debtor will continue making the monthly payments pursuant to the note.

**3-6 Kubota Credit Corporation (POC 7-1) has a** claim in the amount of $49,667.77 which is secured by a 2023 KUBOTA M5-091HDC-1 VIN 7985. Debtor will continue making the monthly payments pursuant to the note.

**Class 4 Claimants -- (Allowed Impaired Unsecured Claims)** are impaired and shall be satisfied as follows: All allowed unsecured creditors shall receive a pro rata distribution at zero percent per annum over the next three (3) years according to the projections in Exhibit B. Creditors shall receive monthly disbursements based on the projection distributions of each 12-month period (See Exhibit "A") with the first monthly payment due 30 days after the Effective Date. Debtor will distribute $19,300.00 to the general allowed unsecured creditor pool over the 5-year (5) year term of the plan, including the under-secured claim portions. The Debtor' General Allowed Unsecured Claimants will receive 1.87% of their allowed claims under this plan. Any potential rejection damage claims from executory contracts that are rejected in this Plan will be added to the Class 4 unsecured creditor pool and will be paid on a pro-rata basis. See below table for breakdown of distributions of the General Allowed Unsecured Claims:

| Allowed General Unsecured Claim Creditors | Total of Claim | Total to be Paid during the 5-year Plan at 1.87% of Total Claim |
|---|---|---|
| **Capital One Bank (POC 1-1)** | $25,155.78 | $470.64 |
| **US Small Business Administration** | $1,003,993.26 | $18,783.55 |
| **Vestis** | $2,448.65 | $45.81 |
| **Totals:** | $1,031,597.69 | $19,300.00 |

**TREATMENT OF LEASE CLAIM:** The Ethician Foundation/George Russell (POC 8-1) has filed a pre-petition lease cure claim in the amount of $84,950.00. Pre-petition, Debtor executed a new lease that brought the lease current and established a new rate for the lease duration. Debtor will object to the claim for pre-petition arrears. Debtor will continue paying rent under the current lease.

**Class 6 Equity Interest Holders (Current Owners)** are not impaired under the Plan and shall be satisfied as follows: The current owners will receive no payments under the Plan; however, they will be allowed to retain ownership in the Debtor. Class 6 Claimants are not impaired under the Plan.

# ARTICLE VII
# CLAIMS OBJECTION PROCESS

### Claims Bar Date.

The Bar Date for all creditors or interest holders, other than governmental units, to file proofs of claim with the Bankruptcy Clerk was October 8, 2025. The Bar Date for governmental units to file Proof of Claims with the Bankruptcy Clerk is not later than 180 days from petition date.

### Effect of Bar Date.

In accordance with Bankruptcy Rule 3003(c), any entity, Person or Creditor whose Claim was listed in the Schedules, or holds a Contingent Claim, Unliquidated Claim, or Disputed Claim, and did not file a proof of Claim before the Bar Date, shall not be treated as a Creditor with respect to such Claim for purposes of voting or distribution.

### Standing.

Following the Effective Date, the Debtor shall have standing to object to Claims.

### Objection Deadline.

Within sixty (60) days from the Effective Date, unless such date is extended by Order of the Bankruptcy Court after notice and hearing, the Debtor may File with the Bankruptcy Court objections to Claims and Equity Interests and shall serve a copy of each such objection upon the holder of the Claim or Equity Interest to which such objection pertains ("Disputed or Undetermined Claim"). Unless arising from an Avoidance Action, any Proof of Claim Filed after the Effective Date shall be of no force and effect and need not be objected to. Any Disputed or Undetermined Claim may be litigated to Final Order. The Debtor may compromise and settle any Disputed or Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed or Undetermined Claim after the Effective Date.

### Allowance of Claims.

At the time, and to the extent that a Disputed or Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to distributions under the Plan. Such Distributions shall be made in the manner provided for by this Plan, or any Final Order of the Bankruptcy Court with respect to such Allowed Claim.

# ARTICLE VIII
# EFFECT OF CONFIRMATION OF PLAN AND INJUNCTION

A. <u>Effective Date and Notice</u>.

The Effective Date of the Plan is the first business day following the date that is 30 days after the entry of the order confirming the Plan becomes final and non-appealable; provided however, if an appeal of the order confirming the Plan has been taken and a stay of confirmation pending appeal in effect, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

On or before ten (10) Business Days after the occurrence of the Effective Date, the Debtor shall mail or cause to be mailed to all holders of Claims and Equity Interests a noticethat informs such holders of the following: (a) entry of the Confirmation Order; (b) occurrence ofthe Effective Date; and (c) such other matters that Debtor deems appropriate.

B. <u>Binding Effect of Plan</u>.

Upon the Effective Date, the Plan and each of its provisions shall be binding on the Debtor, all Creditors, all Equity Interest holders, and all Persons acquiring property under the Plan, whether or not they voted to accept the Plan, whether or not they had a right to vote on the Plan, whether or not any Claim or Equity Interest held by any of them is Impaired under the Plan, whether or not any Claim or Equity Interest held by any of them is Allowed in full, only in part, or Disallowed in full, and whether or not a Distribution is made to any of them under the Plan. This provision includes all successors and assigns of the parties named herein.

C. <u>Vesting of Assets</u>.

Upon the Effective Date, all assets of the Estate shall vest in the Debtor, except as otherwise provided in the Plan. If the Debtor or Reorganized Debtor defaults in performing under the provisions of the Plan and the Case is converted to Chapter 7, all property vested in the Debtor, and all subsequently acquired property owned as of or after the conversion date, shall revest and constitute property of the bankruptcy estate of in the Chapter 7 case.

D. <u>Discharge</u>.

1. <u>Consensual Plan</u>

A consensual plan is one in which the Debtor has met all requirements of § 1129(a) of the Bankruptcy Code except for paragraph (15), but including having all classes of creditors entitled to vote to accept the Plan. If Debtor' Plan is confirmed under § 1191(a), on the Effective Date of the Plan, Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. Debtor will not be discharged from any debt imposed by this Plan.

2. <u>Non-consensual Plan</u>

A non-consensual plan is one in which the Debtor has met all requirements of § 1129(a) of the Bankruptcy Code except for paragraphs (8), (10), and (15) of section 1129. In the event Debtor are unable to get all impaired classes of creditors to vote in favor of the Plan, Debtor will seek for the Court to confirm the Plan pursuant to § 1191(b) of the Bankruptcy Code. If Debtor' Plan is confirmed under § 1191(b), Debtor will receive a discharge by the Court upon completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. Debtor will not be discharged from any debt: (a) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or (b) expected from discharge under § 523 (a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

E. <u>Injunction Against Interference with Plan</u>.

Upon the Effective Date, all holders of Claims, all holders of Equity Interests, and all other parties in interest in the Bankruptcy Case, shall be and are hereby enjoined from taking any action to interfere with the implementation or consummation of the Plan. Additionally, all holders of Claims, all holders of Equity Interest, and all other parties in interest in the Bankruptcy Case shall be enjoined from seeking payment on their Claims or Interest from Debtor except as otherwise provided in the Plan.

## ARTICLE IX
## MECHANICS/IMPLEMENTATION OF PLAN

Debtor anticipate the continued operations of the business to fund the Plan.

## ARTICLE X
## FEASIBILITY OF PLAN

The projections of the future business operations are attached hereto as Exhibit "A". The Debtor believes that the projections are accurate based upon the accounts receivable and the work currently on the books. Based upon the projections, the Debtor believes the Plan to be feasible. Revenue projections in Exhibit "B" account for the anticipated collection from the increased production and the continued operations. The Debtor remained current on administrative fee deposits to both Debtor' Counsel and the Subchapter V Trustee throughout the pendency of this Case. Upon confirmation and the cessation of those deposits, it is anticipated and projected that those funds will be available for creditors and are currently included in Debtor' projections.

## ARTICLE XI
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction to enforce or interpret this Plan shall be retained under the Plan.

## ARTICLE XII
## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor' Plan is not confirmed, the Debtor' bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. As set forth above, the Debtor owes approximately $50,000.00 in administrative claims. Claims to the administrative creditors must be paid prior to the unsecured creditors receiving any payment. The amount owed to the unsecured creditors is approximately $**997,031.15**. The Debtor' assets include funds in the bank, office equipment, inventory, and accounts receivable. Unsecured creditors are receiving approximately 3.07% of their claims under the terms of the Plan. If the Debtor are liquidated, it is anticipated that unsecured creditors would not receive any distribution.

A liquidation analysis is attached hereto as Exhibit "A".

## ARTICLE XIII
## STATUS OF EXECUTORY CONTRACTS AND LEASES

Debtor is assuming the executory contract listed on Schedule G.

# ARTICLE XIV
# EVENTS OF DEFAULT AND EFFECT THEREOF

Any creditor remedies allowed by 11 U.S.C. § 1112(b)(4)(N) shall be preserved to the extent otherwise available at law. In addition to any rights specifically provided to a claimant treated pursuant to this Plan, a failure by the Reorganized Debtor to make a payment or maintain the required insurance as to all Collateral to a creditor pursuant to the terms of this Plan shall be an event of default as to such payments or the maintaining of insurance, if the payment or lack of insurance is not cured within ten (10) days after mailing written notice of default from such creditor to the Reorganized Debtor. Any default notice, inquiry, or other formal communication pursuant to the Plan shall be mailed by certified mail, return receipt requested to the following:

> Robert "Chip" Lane
> The Lane Law Firm
> 6200 Savoy Drive
> Suite 1150
> Houston, Texas 77036-3300

The Debtor will be entitled to no more than two (2) notices of default during the term of the Plan from any creditor. Upon a third default to that creditor, the automatic stay as to that creditor shall be automatically terminated without further notice or order from the Court.

Failure to Perform Covenants

> Failure on the part of the Debtor to perform or observe any covenant set forth in the Plan, and such failure shall remain uncured after the Debtor has had an opportunity to cure the default as provided for under Article XIV, shall constitute an event of default.

Failure to Perform other Terms and Provisions of Plan

> Failure on the part of the Debtor to perform or observe any term or provision set forth in the Plan, and such failure shall remain uncured after the Debtor has had an opportunity to cure the default as provided for under Article XIV, shall constitute an event of default.

Non-payment Default

> Regardless of whether the Debtor confirmed the Plan under subsection (a) or (b) of § 1191 of the Bankruptcy Code, the Debtor shall have thirty (30) days to cure any event of default that is a Non-payment Default after receipt of a written notice of default complying with Article XIV. In the event that a Non-payment Default cannot be cured within thirty (30) days after receipt of a written notice of default complying with Article XIV, then, so long as the Debtor can demonstrate good faith efforts to cure the Non-payment Default, the Debtor shall have an additional thirty (30) days to cure said default. Any additional time after the extension to cure hereunder shall require an order of the Bankruptcy Court.

# ARTICLE XV
# DISCHARGE

Upon Confirmation pursuant to 11 U.S.C. §1191(a) to the extent that a Claim or Debt has been dealt with under this Plan, such Claim or Debt will be discharged. Upon confirmation pursuant to 11 U.S.C. § 1191(b) discharge shall occur upon completion of all payments required under this Plan.

The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

# ARTICLE XVI
# RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that there will be excess funds to pay Creditor Claims.

Except as otherwise provided in the Plan, or for obligations or liabilities required to be paid pursuant to this Plan or the Confirmation Order, Confirmation of the Plan shall result in the issuance of a permanent injunction prohibiting all Entities who have held, hold, or may hold Claims that have been discharges from commencing or continuing any judicial, administrative, or other action or proceeding on account of any Claims against the Debtor that arose prior to the Confirmation Date.

# ARTICLE XVII
# TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor. In this case most of the creditors will not be paid in full the amount of their claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.**

# ARTICLE XVIII
## PENDING OR ANTICIPATED LITIGATION

The Debtor has evaluated potential claims which may be brought. The Debtor is unaware of any litigation which could be brought for the benefit of the creditors of the estate other than the litigation to collect pending accounts receivable.

Dated: October 28, 2025

Respectfully submitted,

J4G, LLC

By: */s/Jean Ann Robinson*
Jean Ann Robinson, Owner